IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-00622-RBJ

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Plaintiff,

v.

JOEY CRUZ, an individual,

    Defendant.

ORDER

This matter is before the Court on plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia")'s motion to dismiss defendant Joey Cruz's counterclaim, ECF No. 24, and motion for summary judgement, ECF No. 27. For the reasons discussed herein, Philadelphia's motion for summary judgment is GRANTED and its motion to dismiss is MOOT.

## I.    BACKGROUND

Defendant Joey Cruz was an employee of Rocky Mountain Human Services (RMHS). Complaint, ECF No. 1 at ¶10; Answer, ECF No. 23 at ¶10. On June 10, 2015, she was involved in an automobile accident driving a car that she owned personally on her way to an appointment within the course and scope of her employment with RMHS. ECF No. 1 at ¶14; ECF No. 23 at ¶14. At the time of the accident RMHS had an effective commercial auto insurance policy from Philadelphia, policy number PHPK1336379 ("the policy"). ECF No. 1-1.

Ms. Cruz claims to have sustained damages in excess of the at-fault driver's liability insurance limits. She asserted a claim for underinsured motorist benefits to Philadelphia under the policy issued to RMHS. ECF No. 1 at ¶19; ECF No. 23 at ¶19. In March 2018, Philadelphia filed this declaratory judgment action, asking the court to declare that the policy does not provide UM/UIM coverage to Ms. Cruz. ECF No. 1. Ms. Cruz filed an answer asserting that she is an insured under the plain language of the policy. ECF No. 23. She also asserted a counterclaim for reformation, arguing that if the policy does not grant her UM/UIM benefits, it violates Colo. Rev. Stat. § 10-4-609. This statute requires automobile liability insurers to provide UM/UIM coverage coextensive with liability coverage unless the named insured rejects such coverage in writing.

Philadelphia filed a motion to dismiss the reformation counterclaim, arguing that it is moot, and that Ms. Cruz lacks standing to seek contractual reformation. ECF No. 24. From Philadelphia's point of view, the claim is moot because the policy provides UM/UIM insured coverage to RMHS, and Ms. Cruz lacks standing because she is not an insured under the contract or an intended beneficiary of the contract. Ms. Cruz responded to this motion, ECF No. 25, and Philadelphia replied, ECF No. 26. Philadelphia then filed a motion for summary judgment on its complaint for declaratory relief and against Ms. Cruz on her counterclaim for reformation, repeating arguments raised in its motion to dismiss. ECF No. 27. Ms. Cruz responded, ECF No. 30, and Philadelphia replied, ECF No. 31. Because Philadelphia's motion for summary judgment incorporates arguments from its motion to dismiss, I will address Philadelphia's request for declaratory relief and Ms. Cruz's counterclaim in the context of the motion for summary judgment. Accordingly, the motion to dismiss, ECF No. 24, is MOOT.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard.

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### B. Applicable Law.

In diversity cases, the Court applies the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). "When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, they must endeavor to predict how the high court would rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2016).

As an initial matter, Plaintiff argues that whether coverage is available under an insurance policy is a question of fact making entry of summary judgment improper. Plaintiff cites *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 513 (Colo. App. 1996) for the proposition that "[w]hether coverage is ultimately available under the policy is a question of fact for the trier of fact." *Id.* While the determination of events triggering liability for insurance coverage is a question of fact,

3

here plaintiff has pled and defendant has judicially admitted the relevant facts about the ownership of the car and the events surrounding the collision. What remains in dispute is the meaning of the insurance policy. The interpretation of the contractual terms of an insurance policy is a matter of law properly decided in a motion for summary judgment. *Thompson v. Md. Cas. Co.,* 84 P.3d 496, 501 (Colo. 2004); *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n*, 67 P. 3d 12, 20 (Colo. 2003) ("Whether a written contract is ambiguous and, if not deemed ambiguous, how the unambiguous contractual language should be construed, are questions of law . . . ."). However, once it has been determined that a contract is ambiguous and that its construction depends on extrinsic facts and circumstances, then the terms of the contract become questions of fact for the trier of fact. *May v. Interstate Moving & Storage Co.*, 739 F.2d 521, 523 (10th Cir. 1984)

Insurance policies are construed under the same principles that govern the interpretation of any contract. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999). In interpreting a contract, courts seek to give effect to the reasonable expectations of the parties. Terms are given their plain and ordinary meaning unless the intent expressed in the contract indicates an alternative interpretation should be used. *Id.* Colorado courts also recognize that unlike a negotiated contract, an insurance policy is often imposed on a "take-it-or-leave-it basis." Thompson, 84 P.3d at 501 (citing *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo. 1998)). "Therefore, we assume a 'heightened responsibility' in reviewing insurance policy terms to ensure that they comply with 'public policy and principles of fairness.'" *Id.* Accordingly, Colorado courts construe ambiguous terms in an insurance policy in favor of coverage. *Id.* at 502 (citing *State Farm Mut. Auto. Ins. CO. v. Nissen*, 851 P.2d 165, 166 (Colo. 1993)).

4

## III.     ANALYSIS

Philadelphia seeks a declaratory judgment that Ms. Cruz is not entitled to benefits under the policy for injuries from the June 10, 2015 accident.  It argues that she is not an insured under the policy's general liability coverage or the policy's UM/UIM coverage, and accordingly, there is no basis to reform the policy to afford her coverage.  Although Ms. Cruz is only seeking underinsured motorist coverage, the general liability coverage under the policy is relevant because Colo. Rev. Stat. § 10-4-609 requires UM/ UIM benefits to be coextensive with a policy's bodily injury liability coverage unless waived in writing.  I will first address the UM/UIM coverage under the policy and then analyze the policy's liability coverage to determine whether the policy comports with Colorado law.

### A.  **UM/UIM Coverage.**

The policy contains a separate endorsement for Colorado uninsured motorist coverage. ECF No. 1-1 at 151-52.  This endorsement defines an "insured" for purposes of UM/UIM coverage as follows:

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":
   **a.** The Named Insured and any family members.
   **b.** Anyone else while occupying or using a covered auto or a temporary substitute for a covered auto.  The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
   **c.** Anyone for damages he or she is entitled to recover because of bodily injury sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
   **a.** Anyone occupying or using a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
   **b.** Anyone for damages he or she is entitled to recover because of bodily injury sustained

5

by another "insured".

ECF No. 1-1 at 151-52.[1] The named insured is listed solely as "Denver Options, Inc. dba Rocky Mountain Human Services" in the contract. *Id.* at 27. Therefore, paragraph 1 is not applicable, and only paragraph 2 defines the "insureds". Further, neither party asserts that Ms. Cruz sustained damages from another "insured," so paragraph 2(b) is also not applicable. Accordingly, to have UM/UIM coverage, Ms. Cruz must have been occupying or using a covered auto or temporary substitute at the accident.

"Covered autos" for each type of coverage are described in the Business Auto Coverage form as follows:

| **Coverages** | **Covered Autos** | **Limit** |
|---|---|---|
| Liability | 01, 08, 09 | $1,000,000 CSL |
| * * * | | |
| Uninsured Motorist | 02 | $1,000,000 CSL |
| Underinsured Motorists (When Not Included in Uninsured Motorist Coverage) | 02 | $1,000,000 CSL |

ECF No. 1-1 at 28. The covered auto symbol 02 is designated as "owned autos only." *Id.* at 133. Owned autos are defined as "[o]nly those autos you own . . . ." *Id.* As an initial matter, the parties dispute the definition of "you" in the insurance contract. Philadelphia believes that "you" refers to RMHS only. ECF No. 27 at 5. Ms. Cruz believes that "you" must refer to RMHS and any RMHS employee or agent. ECF No. 30 at 11-13. I agree with Philadelphia.

---

[1] The policy places the word "auto" and a number of other terms in quotation marks to indicate that they have a specific definition. For simplicity, I will omit the quotation marks around terms in the policy not currently in dispute.

For one, the policy states that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." ECF No. 1-1 at 133. As previously noted, RMHS is the only named insured. And this matters in Colorado: "Because the identification of the named insured is of paramount interest to the insurer, in interpreting insurance policies, courts have held that the term 'named insured' has a restricted meaning and does not apply to any persons other than those named in the policy." *D.C. Concrete Mgmt., Inc. v. Mid-Century Ins. Co.*, 39 P.3d 1205, 1207 (Colo. App. 2001).

Moreover, the plaintiff's reading of "you" would make the description of the covered auto designation symbols nonsensical. This table defines "owned autos" as "only those autos you own" but separately defines "nonowned autos" as including "autos owned by your employees, partners, members, or members of their households but only while used in your business or your personal affairs." ECF No. 1-1 at 133. If "you" in the former definition refers to RMHS and RMHS employees, then why would there be a separate term to refer to autos owned by employees?

Ms. Cruz argues that "you" must be interpreted throughout the policy to include RMHS employees because a corporation cannot drive cars or sustain bodily injury; it can only act through individuals. To this point, Colorado courts will not afford a literal interpretation to policy language insuring a corporation where such an interpretation would result in no meaningful coverage for a benefit that the insured has paid a specific premium. *See Hawkeye-Sec Ins. Co v. Lambrecht & Sons, Inc.*, 852 P.2d 1317, 1318 (Colo. App. 1993). However, as I will explain further, I do not believe these circumstances are present here.

7

In *Hawkeye-Sec Ins.*, the policy at issue named a corporation as the insured and named any family member related to the named insured by blood, marriage, or adoption as an additional insured for purposes of uninsured motorist coverage. 852 P.2d at 1318. There was no requirement that either the insured or any family member be driving one of the vehicles designated in the policy to recover under the uninsured motorist coverage. *Id.* The spouse of the corporation's sole shareholder was injured while occupying a vehicle not owned by the corporation and made a claim for uninsured motorist coverage. The Colorado Court of Appeals acknowledged that if those provisions were to be interpreted literally, there could *never* be coverage under the uninsured motorist provisions of the policy. *Id.* at 1319. This is because the insurer agreed to pay only for damages resulting from "bodily injury," and a corporation cannot sustain bodily injury nor could it have relatives by "blood, marriage or adoption" that might sustain such injury. *Id.* Thus, the court held that the spouse must be considered a "family member" for uninsured motorist coverage contained within the policy.

On the other hand, a separate division of the Colorado Court of Appeals took a literal interpretation of a policy naming a corporation as the insured in *General Insurance Company of America v. Smith*, 874 P.2d 412, 413 (Colo. App. 1993). It found no underinsured motorist coverage where the claimant was an owner of the insured corporation and was struck by a car while riding his bicycle for personal reasons. There, the insurance contract provided underinsured motorist coverage to family members only if the named insured was an individual, but also provided coverage to "anyone else occupying a covered auto or a temporary substitute for a covered auto," much like the

policy here. *Id.* at 414. The court observed that while the corporation could not suffer bodily injury, because it provided underinsured motorist coverage to anyone occupying a covered auto, the insured "received some meaningful motorist coverage in return for the premium it paid, and the purpose of the insurance contract was fulfilled." *Id.* at 415. In sum, courts interpret literally a corporation listed as the named insured unless such an interpretation would undermine the purpose of the insurance contract in not rendering a benefit for a paid premium. *See Hillabrand v. Am. Family Mut. Ins. Co.*, 271 Neb. 585, 593 (2006) ("[A]n automobile insurance policy issued to a corporation is not rendered ambiguous merely because the body of the policy refers to the corporation using the personal pronoun 'you' when the word 'you' is clearly defined to be the named insured and the corporation is clearly designated as the named insured.").

Here, Ms. Cruz would be entitled to UM/ UIM coverage while driving a car owned by RMHS (or a temporary replacement vehicle). The policy describes twenty-seven RMHS-owned autos in the "Schedule of Covered Autos You Own." ECF No. 1-1 at 37-45. Thus, the policy provides UM/UIM coverage in some circumstances notwithstanding the fact that a corporation cannot suffer bodily injury. Accordingly, I do not hesitate to conclude that "you" refers to RMHS only, and that UM/UIM coverage extends to individuals occupying autos owned by RMHS or a temporary substitute. Because Ms. Cruz was driving a car she owned personally at the time of the collision, ECF No. 1 at ¶14; ECF No. 23 at ¶14, and she does not allege that this vehicle was a temporary substitute for a RMHS owned automobile, she is not an insured for purposes of UM/UIM coverage.

9

## B. Reformation.

Ms. Cruz filed a counterclaim for reformation should I conclude (as I have) that she is not entitled to UM/UIM coverage under the policy. Ms. Cruz asserts that the policy does not comply with Colo. Rev. Stat. § 10-4-609(1)(a) and should be reformed. Colo. Rev. Stat. § 10-4-609(1)(a) requires automobile insurance policies to provide coverage for "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . except that the named insured may reject such coverage in writing." Colorado courts have held that "[i]f an insurer fails to offer the required coverage, or if the policyholder does not reject the offered coverage in writing, the policy will be interpreted to include UM/UIM coverage." *Apodaca v. Allstate Ins. Co.*, 255 P. 3d 1099, 1104 (Colo. 2011) (*citing Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 101 (Colo. 1995)). The Colorado Supreme Court has interpreted the phrase "persons insured thereunder" to mean that insurers are required to provide UM/UIM coverage to a class of individuals as broad as the class of individuals provided with liability coverage in the same policy. *Aetna Cas. & Sur.*, 906 P.2d at 101 (holding that an insurance policy with a liability provision covering "permissive users" of insured automobiles but only granting UM/UIM coverage to "permissive occupiers" of insured automobiles impermissibly limited UM/UIM benefits).

Ms. Cruz believes that Philadelphia must produce RMHS's original, completed auto insurance application; either its original written rejection of UM/UIM benefits or a written counteroffer for lessor UM/UIM benefits than its liability policy; and proof of notice to employees that RMHS opted for lesser UM/UIM benefits than that of its

10

liability policy to prove its compliance with Colo. Rev. Stat. § 10-4-609. ECF No. 23 at ¶15. Philadelphia counters, first, that this counterclaim is moot because UM/UIM coverage is provided for in the policy coequal with liability coverage. And because Ms. Cruz is not an insured under the liability provisions, Colo. Rev. Stat. § 10-4-609(1)(a) does not require coverage to be extended to her under the UM/UIM provisions of the policy. Second, Philadelphia argues that Ms. Cruz lacks standing to seek contractual reformation because she is not an insured, a party to the contract or an intended third-party beneficiary of the contract. The central issue to resolving either argument is whether Ms. Cruz is an insured under the policy's liability coverage.

1. **The Policy's Liability Coverage.**

    The policy defines an insured as:

    **a.** You for any covered "auto".
    **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow *except*:
    **. . .**
    **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

ECF No. 1-1 at 134-35 (emphasis added). Philadelphia argues that Ms. Cruz does not qualify as an insured under either paragraph 1(a), as "you," or under paragraph 1(b), as "anyone else . . ." For the reasons discussed *supra* at 6-9, I agree that "you" refers to RMHS only. Paragraph 1(b) provides coverage to anyone else using a covered auto owned, hired, or borrowed by RMHS with five exceptions. Philadelphia argues that Ms. Cruz does not qualify as an insured under this definition either because she was not using an auto owned, hired, or borrowed by RMHS at the time of the accident. Further, she

falls into one of the exclusions from this coverage because she was an employee driving a vehicle that she owned.

Ms. Cruz counters that this language is nonetheless ambiguous because it contradicts with the "Schedule of Coverages and Covered Autos" in the policy. *See* ECF No. 1-1 at 28-29, 133. The Schedule, excerpted *supra* at 6, states that the policy provides liability coverage for autos designated by the symbols 1, 2, and 9, which are defined in the business auto coverage form as: (1) any auto, (2) owned autos only and (9) nonowned autos only. Nonowned autos are defined as "[o]nly those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees . . . or members of their households but only while used in your business or personal affairs." *Id.* at 133. Plaintiff argues that this section grants liability coverage to automobiles owned by employees and used in the course of RMHS's business. Thus, at the time of the accident, Ms. Cruz was driving a "covered auto," and she would have been an insured under the liability provision of the policy. ECF No. 30 at 9.

Though Ms. Cruz's car would have been a "covered auto," I disagree that this fact is sufficient to transform her into an insured when the policy specifically excludes her as an insured. "An insurance policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation." *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288 (Colo. 2005). However, a court should construe the terms of an insurance contract as they would be understood by a person of ordinary intelligence and avoid strained constructions of the language used. *Allstate Ins. Co. v. Starke*, 797 P.2d 14 (Colo. 1990).

12

Here, there is a simple, plain language interpretation that explains why Ms. Cruz's car might be a covered auto while Ms. Cruz herself is not an insured for liability purposes. The contracting parties, RMHS and Philadelphia, agreed that RMHS would be entitled to coverage should it be liable for a collision involving an employee driving her personal automobile in the scope of her employment. The employee is specifically excluded from being an insured if she is driving her personal automobile, but RMHS is insured if it is vicariously liable for damages arising from the employee's collision. Because a reasonable, plain language interpretation explains how an employee's automobile could be a "covered auto," while the employee herself is excluded from liability coverage, this supposed "contradiction" is insufficient to introduce ambiguity into the insurance contract.

Having found that Ms. Cruz is not an insured under the policy, Ms. Cruz must show she is a third-party beneficiary to the insurance contract to have standing to pursue reformation of the policy. *See, e.g., Thompson v. Budget Rent-a-Car Sys.*, 940 P.2d 987, 990 (Colo. App. 1996) (an insured or third-party beneficiary can seek reformation to add statutorily required coverage). However, assuming without deciding that Ms. Cruz could have standing as a third-party beneficiary of the policy, I find that her claim for reformation nonetheless fails because the policy provides UM/UIM coverage to insureds in an amount equal to its bodily injury liability insurance: $1,000,000. ECF No. 1-1 at 28. Ms. Cruz has not convinced me that there is any person who is entitled to liability coverage that is excluded from the policy's UM/UIM coverage, at least in the context of her claim. The cases that Ms. Cruz cites to support her theory of reformation, *DeHerrera*

*v. Sentry Insurance Co.*, 30 P.3d 167 (Colo. 2001) and *Jaimes v. State Farm Mutual Automobile Insurance Co.*, 53 P.3d 743 (Colo. App. 2002), both involve a plaintiff who is an insured under the policy. In sum, because Ms. Cruz is not a person insured under the policy, Colo. Rev. Stat. § 10-4-609 does not require that Philadelphia offers her UM/UIM benefits coextensive with the policy. Accordingly, Philadelphia's motion for summary judgment on its declaratory action and against Ms. Cruz's counterclaim is GRANTED.

## ORDER

Plaintiff Philadelphia's motion for summary judgment, ECF No. 27, is GRANTED. Its motion to dismiss defendant's counterclaim, ECF No. 24, is MOOT.

DATED this 24th day of June, 2019.

BY THE COURT:

R. Brooke Jackson
United States District Judge